HAROLD J. RUVOLDT, PLAINTIFF-RESPONDENT, v. JOSEPH M. NOLAN, RECEIVER FOR THE HUDSON COUNTY EMPLOYEES PENSION COMMISSION, DEFENDANT-APPELLANT.

Argued April 2, 1973—Decided June 5, 1973.

*Mr. Jay S. MacNeill* argued the cause for appellant (*Mr. Joseph M. Nolan,* appellant, *pro se,* attorney; *Mr. Ernest R. Nuzzo,* on the brief).

*Mr. Harold J. Ruvoldt, Jr.* argued the cause for respondent (*Messrs. Ruvoldt and Ruvoldt,* attorneys).

*Mr. Gerald D. Miller* argued the cause for *amici curiae* (*Messrs. Miller, Hochman, Meyerson & Miller,* attorneys).

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. This is an appeal, on direct certification by this Court, 62 *N. J.* 262 (1973), from a judgment of the Chancery Division reversing an order by appellant, as court-designated Receiver for the Hudson County Employees Pension Commission, vacating and setting aside a disability pension granted by that body to respondent Harold J. Ruvoldt ("Ruvoldt") in December 1963. This action arose out of the following circumstances.

In 1971 the Hudson County Grand Jury investigated the operations of the Pension Commission, resulting in indictments of the five then Commissioners and of the Hudson County Medical Examiner for improprieties in the administration of the county pension fund. Pending trial of those indictments the Attorney General brought a civil action in the Superior Court seeking relief, including appointment of a receiver, for alleged mismanagement, fraud and abuse of power by the Commission. The Assignment Judge of Hudson County appointed appellant Receiver of the Commission *pendente lite* with power to administer the pension fund and to exercise all the functions, powers and duties of the Commission. The members of the Commission were enjoined from acting officially in the meantime. Ruvoldt was never made a party to those proceedings and has not participated therein. There were ultimately convictions of the commissioners, appeals from which are pending in the Appellate Division, and an acquittal of the medical examiner. The action of the Assignment Judge in appointing a receiver was affirmed on appeal by the Appellate Division.

The Receiver reviewed disability pensions previously granted by the Commission, and, on the basis of pensioners' files and such new information as was submitted, terminated 205 pensions following notice and hearing in each such case. Ruvoldt and others so terminated filed actions in the

Superior Court challenging the terminations of the pensions as illegal on various grounds. The Receiver filed counterclaims demanding return of pension moneys paid each such plaintiff. Notwithstanding that we have been apprised, through oral argument and briefs, as to objections to the Receiver's actions from some of the other pensioners affected, as *amici curiae,* we will be concerned in this opinion only with Ruvoldt's case, deeming it advisable to withhold any views respecting the cases of the others, particularly since they have not yet been adjudicated by the trial court.

The Chancery Division, on motion for summary judgment in Ruvoldt's case, granted the motion in favor of the plaintiff. While it held the Receiver had the power to terminate the pension, and was not barred by principles of estoppel, laches or waiver, it determined that Ruvoldt was entitled to the pension on the ground that the evidence established that at the time the pension was granted, and ever since, he had a physical disability which permanently incapacitated him from trying cases in court, as required by his duties as an assistant prosecutor of Hudson County, and, since he had been a county employee for over 20 years, that he was entitled to a pension at half-salary pursuant to *N. J. S. A.* 43 :10–3.

Ruvoldt was born in 1910 and entered public service for the County of Hudson in 1935 as secretary to the county auditor. (He had previously been employed by the Jersey City Board of Education.) Later he became an attorney-at-law and was employed as assistant county counsel, and finally, beginning in 1959, as assistant prosecutor.

The documentary pension application record before the pension commission and the Hudson County Prosecutor's office is as follows.

On October 18, 1963 Ruvoldt submitted to Prosecutor Tumulty of Hudson County a pension application signed by Ruvoldt on a form of the pension commission whereby he made "application for retirement under disability served over twenty years" [*sic*], to be effective January 1, 1964.

Ruvoldt requested the prosecutor's "department certification" thereon. The prosecutor forwarded the application to the Commission on November 13, 1963, his covering letter disclaiming knowledge of facts relevant to Ruvoldt's pension status beyond the fact that his current salary was $10,000. The letter closed: "Officially, if approved, I will terminate Mr. Ruvoldt's status in this office as of December 31, 1963."

On November 7, 1963 Ruvoldt wrote a letter to the prosecutor stating he had been under care of Dr. E. F. Ricciardelli, apparently referring to an appended "report" of that physician, and said: "In view of my present medical condition it is imperative that I request sick leave * * *. It would appear that if my condition has not improved by February 1, 1964 that I would then apply for Retirement under Disability * * *." The physician's report certified that he was treating Ruvoldt for "obesity, hypertension, tachycardia and dyspnea" and suggested a three-months cessation of his duties.

On December 27, 1963 Dr. Ricciardelli sent the prosecutor a letter addressed "To whom it may concern:", reciting that based upon observation and treatments of Ruvoldt he was of the opinion "he is physically unable to perform his duties as a member of the Prosecutor's staff". In an affidavit supplied to the Receiver Dr. Ricciardelli deposed that a copy of that certification was at the time sent to the commission at Ruvoldt's request, but the Receiver's findings aver that the letter is not in the pension file.

On December 6, 1963 the commission's then examining physician, Dr. Vincent Butler (since deceased), certified to the commission the results of his examination of Ruvoldt in connection with the pension application. He listed under the heading of "Subjective Complaints" — "Has become increasingly short of breath. Is under medical care for hypertension and obesity." His "objective findings" were:

"Cardiac Hypertrophy and Dilatation. Tachycardia. Obese. Dyspneic on exertion. Blood pressure 170/90." His recommendation was that the disability pension be approved.

On December 23, 1963 the commission notified both Ruvoldt and the prosecutor in writing that the pension had been approved, effective December 21, 1963. Ruvoldt received pension payments regularly thereafter until their suspension by the Receiver on March 15, 1972.

Ruvoldt accepted the offer of the Receiver to permit him to substantiate his pension rights by proofs before a hearing officer. A hearing was conducted, and, in addition to submission of all the documents aforementioned, evidence was adduced which we herewith summarize. (Proof in affidavit form was permitted by the Receiver in advance of the hearing.)

An affidavit of Dr. E. F. Ricciardelli was submitted, deposing that Ruvoldt was under his care from 1957 to April 1966. His condition was one of tachycardia, dypsnea, hypertension and obesity. "The heart and hypertension involvement combined to make the continued tension of trial work and active practice a threat to his life." Some time prior to September 1963 he advised Ruvoldt to curtail his trial work and to schedule frequent "breaks" during the day. Pursuant to his advice Ruvoldt closed his Newark Avenue, Jersey City, law office, and conducted a limited law practice (along with his work in the prosecutor's office) from his home. But Ruvoldt continued to try cases for the prosecutor, causing a deterioration of his condition and the necessity for Ricciardelli's treating him, in addition to the other conditions mentioned above, for "weakness, inability to breathe and severe tremors in both hands". Such conditions were worst during and immediately after the trial of cases, and, in the doctor's opinion, were causally attributable to the tension and excitement of trials.

During early 1963 the condition became worse, producing "fainting, cramps and fluttering sensations in his chest". The doctor prescribed frequent bed rest. In June 1963 he

advised Ruvoldt to discontinue the trial of cases completely but he could not do so because of the requirements of his duties with the prosecutor's office. After a satisfactory vacation period in the summer of 1963 Ruvoldt returned to the trial of cases in September 1963, and his symptoms reappeared. In early October Ricciardelli informed Ruvoldt that his condition dictated his retirement as an assistant prosecutor, and the latter reluctantly agreed to take steps toward that end. On two occasions after the trial of cases at about that time Ruvoldt was so ill that he put him on bed rest for 3 days. He advised him to seek a sick leave until his pension application could be acted on.

Ruvoldt continued under Dr. Ricciardelli's care after his retirement from the prosecutor's office. On one occasion when he attempted to try a case he sustained a severe attack, forcing him to bed for several days under medication. Generally his cardiovascular and other symptoms continued as before. The doctor discontinued care of Ruvoldt in April 1966 because at times he required home treatment at night; he transferred him to the attention of Dr. James L. Hollywood, who was available for night calls.

Ruvoldt submitted an affidavit of Dr. Hollywood who said he treated Ruvoldt after April 1966 and that his symptoms included difficulty in breathing, a feeling of being smothered, weakness, nausea, fainting, fluttering sensations in chest, clammy feeling, stomach cramps, constipation and tremors of both hands. Dr. Hollywood was of the opinion that Ruvoldt could not, prior to and after April 1966, engage in his "former activity" because of chest pain and accompanying weakness. His current diagnosis was "obesity, hypertensive cardiovascular disease and diverticulosis".

In an affidavit Joseph P. Hanrahan, First Assistant Prosecutor of Hudson County during Ruvoldt's employment in that office (now a Superior Court Judge), deposed that among the usual duties of Ruvoldt's position was the trial of criminal cases between the hours of at least 9:30 A.M. and 4 P.M. In the fall of 1963 Ruvoldt was absent from the

office, and the reason given him was "his physical inability to perform trial work which was the usual duty of his office as an Assistant Prosecutor".

Ruvoldt testified in person before the hearing examiner and was cross-examined by the latter. He said that he, along with 3 other lawyers, had been transferred from the county counsel's office, where his work was mostly processing claims, to the prosecutor's office, in 1959. The implication is that the transfer was involuntary. He said he was needed there and that protesting the transfer would probably have been useless. Originally his trial work for the prosecutor (Lawrence A. Whipple, at the time) was for alternate two-week periods, but after Mr. Tumulty became prosecutor it was daily on a continuous basis. In early 1963 he had an attack of chest pains and difficulty in breathing which caused him to seek treatment from Dr. Ricciardelli. The doctor put him to bed and advised him that the nature of his work (trying cases) was making his condition worse. He had a vacation in the summer of 1963, but when he resumed trying cases in September, contrary to the advice of Dr. Ricciardelli, he encountered much difficulty and had to ask for "extra recesses" during the course of trials. During trials he would develop chest pains, hand tremors and shortness of breath, and would grow faint and find it difficult to stand. There was a particularly severe reaction after Ruvoldt completed the 2-week trial of a murder case in October 1963 which resulted in his being confined to bed for four or five days. Dr. Ricciardelli told him there would be "fatal results" if he continued trying cases.

The foregoing conditions led to Ruvoldt's applying for a disability pension, and, while awaiting action thereon, for a leave of absence for illness, with the final favorable pension action noted above. There is nothing in the record to indicate that Ruvoldt sought from the prosecutor or the county authorities a transfer to legal work not requiring trying cases or that any such opportunity was offered to him or available if he wanted it.

After leaving the prosecutor's office in December 1963 Ruvoldt on medical advice at first maintained a legal practice from his home on a part-time basis. He continued to be treated medically for the conditions described above. He has tried only two cases since 1963, one a civil case and the other a drunk-driving case. Both instances were attended by ill effects of the type already described. In 1966 Ruvoldt formed a law partnership with his son, newly admitted to the bar. The son does all the trial work. Ruvoldt's practice, which is not on a full-time basis, consists of real estate, estates and defense negligence work, excluding trials, but involving occasional appearances in court on approvals of settlements of infants' claims. He has also been active in county and state bar association matters. Ruvoldt's income tax returns show income from private practice of some $12,000 in 1963, $24,000 in 1964, $25,000 in 1965 and $26,000 in 1966.

In revoking Ruvoldt's pension the Receiver made the following findings pertinent to the legal issue of his alleged permanent inability to perform the duties of his position in December 1963.

"A review of the facts indicate that while advised to curtail activities, pensioner continued to conduct a law practice from his home while working as an assistant prosecutor. His gross income from his private practice in 1963 was $12,569.45 which, according to his attorney, was low because of illness that year. The pensioner's allegation that his disability was permanent is rebutted by the fact that his gross income for the practice of law increased in 1964 to $24,369.68 and continued through 1965 and 1966 when the gross income was $24,821.00 and $26,583.18, respectively.

Pensioner made a decision to terminate his County position rather than his private practice. This decision, however, is not determinative as to his physical condition. He was from the time of his pension able to conduct an active diversified law practice. He was not totally and permanently disabled as defined in *Meehan v. County Employees Pens. Comm.*, 135 N. J. L. 17 and *Getty v. Prison Officers Pension Fund*, 85 N. J. Super. 383."

The Chancery Division concluded that the Receiver was in error in determining that Ruvoldt was required to be

"totally and permanently disabled" in order to qualify for a pension under *N. J. S. A.* 43:10-3. It decided that "the basic duty" required of Ruvoldt's employment was the trial of criminal cases and that he was, on the whole record, physically incapable of doing that kind of work. He was therefore incapacitated from reasonably performing the duties of his position, within *Meehan v. County Employees' Pension Com. of Essex Co.*, 135 *N. J. L.* 17, 18 (E. & A. 1946).

We turn our attention first to the question of Ruvoldt's entitlement to the pension under the evidence and the factfindings of the trial court. First, we conclude that the factfinding that Ruvoldt was physically unable to try cases as of December, 1963, and permanently thereafter, is supported by substantial credible evidence, and we will not disturb it. The question then posed is whether an employee of a county engaged as a lawyer who is physically able to do all phases of a lawyer's work except try cases in court can be said to be permanently disabled for pension purposes. We find no reported case dealing with that precise issue, and none is cited by the parties.

The controlling statute, *N. J. S. A.* 43:10-3, reads as follows:

"An employee of a county of the first class who shall have served in the county's employ for a period of twenty years and shall have been found, as hereinafter provided, to be physically unfit for further service, shall, whether or not he has reached sixty years of age, upon written application to the pension commission, be retired on half pay."

The procedure to be followed after the filng of the application is specified by *N. J. S. A.* 43:10-4. The pension commission and the applicant each procure the opinion of a physician, who may be examined under oath by the commission. If the two physicians disagree, the commission may call a third to resolve the disagreement. The commission decides by resolution whether the applicant is entitled to

the pension and is required to consider the physicians' determinations in that regard.

The leading case interpreting the statute is *Meehan v. County Employees' Pension Com. of Essex Co.*, 135 *N. J. L.* 17 (E. & A. 1946). This involved a penitentiary guard who lost his left eye. The court adverted to the holding of the old Supreme Court as being to the effect that the loss of one eye did not incapacitate the man "from reasonably performing his duties under the conditions of his employment" (*Id.* at 18). A medical witness for the applicant had testified that he could perform his duties but probably not as well as if he had two eyes. The court affirmed the Supreme Court judgment, declaring: "The sole question is whether the disability suffered permanently incapacitates [the employee] from reasonably performing the duties of his position." *Ibid.*

In *Simmons v. Policemen's Pension Com., Deal*, 111 *N. J. L.* 134 (Sup. Ct. 1933), however, a policeman was held disabled for pension purposes where an accident had impaired to a permanent extent his hearing in one ear and his vision. He had been denied a pension on the ground he could do desk duty "where perfect hearing and eyesight are not so essential" (111 *N. J. L.* at 135). The court reversed the denial of pension, saying (at 136):

"We think the theory of our statute is that a fireman is a fireman, a policeman a policeman, and neither a desk clerk; and that a policeman permanently disabled to do his ordinary duty as such and otherwise within the statute is entitled to invoke it."

*Cf. Selig v. Firemen's &c., Pension Fund Com.*, 119 *N. J. L.* 266, 267 (Sup. Ct. 1938).

In *Getty v. Prison Officers' Pension Fund*, 85 *N. J. Super.* 383 (App. Div. 1964), one of the issues with which the court was confronted but which was not decided because of a deficiency in the record, was whether a public employee in charge of an institutional soap factory, suffering from emphysema allegedly attributable to the soap dust he in-

haled, was permanently disabled. The court said: "* * * we hold that the criterion is whether or not Getty is employable in the general area of his ordinary employment, as distinguished from whether he is generally unemployable *or is disabled from performing the specific function for which he was hired."* (*Id.* at 390) (emphasis added).

The position of the Receiver is that a lawyer-employee who can function with substantial economic return as a lawyer outside the area of public employment cannot be regarded as within the legislative purview of ·"physically unfit for further [public] service", for pension purposes, merely because unable to perform one kind of activity pursued by lawyers — *i. e.,* trial of cases. Ruvoldt counters with the arugment that one having in excess of the statutory twenty years of public service who becomes physically unfit, permanently, to do the only kind of work the employer will allow him to do, cannot reasonably be denied the benefit of the statute since he is then unable reasonably to perform the ordinary duties of the position as assigned to him by his superior.[1] This contention, while at first blush apparently just, may be unsound. For purposes of a right to pension for disability, it may be that a good-faith assignment of an employee to the only work administratively available for him to do leaves him with no choice but to do it or quit the job if he physically cannot, provided his general job category encompasses duties he physically can perform notwithstanding that he is not needed for them at the time. See *Getty, supra.* Such a principle might, however, possibly bring in its train incidental rights and obligations as between employer and employee under the civil service statutes and regulations. On the other hand, acceptance of Ruvoldt's position

---

[1]Note that in some pension statutes the Legislature has defined disability in terms of inability to perform *usual duties and any other available duties* the employer is willing to assign the applicant. See, *e. g., N. J. S. A.* 43:16–2; 43:16A–7; 43:16A–8; 43:8A–8; 43:13–22.55.

on the merits as aforestated might have to be qualified to the extent of imposing on such an applicant the condition precedent of requesting of the employer transfer to work of a kind he physically could perform.

For reasons to be stated we have concluded that the totality of the circumstances of this case would render it clearly unjust now to apply a substantive rule of disentitlement of pension against Ruvoldt, and we therefore will not decide the merits of that substantive issue on this appeal.

Ruvoldt argues that once a pension commission grants a pension pursuant to a statutory scheme a subsequent commission or one acting in its place may not reopen the validity of the grant or the factual determinations of the granting body.

Contrary to views in some other jurisdictions, see *Annot.*, 73 *A. L. R.* 2d 939, 949 (1960), the principle well established in this State, as well as generally, 2 *Am. Jur.* 2d "Administrative Law", § 520 *et seq.*, p. 329 *et seq.* (1962); *Annot.*, 73 *A. L. R.* 2d 939, *supra* at 943–51, is that: "In the absence of some legislative restriction, administrative agencies have the inherent power to reopen or to modify and to rehear orders that have been entered. Of course, the power must be exercised reasonably and application seeking its exercise must be made with reasonable diligence." *Burl. Cty. Evergreen Pk. Mental Hosp. v. Cooper*, 56 *N. J.* 579, 600 (1970). See also *Handlon v. Town of Belleville*, 4 *N. J.* 99, 106–07 (1950); *McFeely v. Bd. of Pension Comr's*, 1 *N. J.* 212, 216, 218 (1948); *Paterson v. Div. of Tax Appeals*, 40 *N. J. Super.* 543, 546 (App. Div. 1956). There is emphasis in the cases on the requirement that such action must be taken within a reasonable time or with reasonable diligence. But what is a reasonable time must perforce depend on the interplay with the time element of a number of other attendant factors, such as the particular occasion for administrative reexamination of the matter, the fraud or illegality in the original action and any contribution thereto or participation therein by the beneficiary of the original action,

as well as the extent of any reliance or justified change of position by parties affected by the action. See *Anchor Casualty Co. v. Bongards Co-op. Cream. Ass'n,* 253 *Minn.* 101, 91 *N. W.* 2d·122 (Sup. Ct. 1958); *Schireson v. Shafer,* 354 *Pa.* 458, 47 *A.* 2d 665, 667–668 (Sup. Ct. 1946); *Peerless Fixture Co. v. Keitel,* 355 *Mo.* 144, 195 *S. W.* 2d 449, 452 (Sup. Ct. 1946); *Knestis v. Unemployment Compensation and Place. Div.,* 16 *Wash.* 2d 577, 134 *P.* 2d 76, 78 (Sup. Ct. 1943); *Waterbury Sav. Bank v. Danaher,* 128 *Conn.* 78, 20 *A.* 2d 455, 461 (Sup. Ct. Er. 1941).

█ Conflicting considerations bear upon the justice of the timing of the Receiver's action in the present instance. Although the lateness of the review action here was not deliberate but an incident of the fortuitous manner in which the previous actions of the pension commission became suspect, Ruvoldt cannot justly be tarred by the brush of the investigation resulting in the indictments and convictions.[2] The perfunctoriness with which his pension application was dealt with, although far from a model of administrative thoroughness, was seemingly in conformance with the statutory procedure specified by *N. J. S. A.* 43:10–4, and does not warrant an inference of fraud or patent irregularity. However, the Receiver asserts the absence of a lawful basis for the original grant of pension even conceding Ruvoldt's factual assertion, sustained by the Chancery Division, that he was permanently unable to function as a trial lawyer as of the time of grant of pension in December 1963. Illegality of administrative action is a recognized ground for reconsideration of and reopening a determination or order, providing the reopening is not exceptionable for other reasons. 2 *Am. Jur.* 2d "Administrative Law," § 524, p. 336 (1962). Although even as to such a ground, the question of overall

---

[2] Three of the members of the commission at the time Ruvoldt's application was granted were not members during, nor indicted in the recent investigation. Dr. Butler, the then medical examiner, died in 1967. A later medical examiner was indicted, but, as noted, acquitted.

fairness and justice in the attendant circumstances cannot be overlooked, see *Handlon v. Town of Belleville, supra* (4 *N. J.* at 106–07), yet the courts have been sensitive to policy considerations related to diversion of public funds for statutorily unwarranted pensions. *Tubridy v. Consolidated, etc., Pension Com.*, 84 *N. J. Super.* 257, 263–64 (App. Div. 1964); *Kern v. State*, 212 *Ind.* 611, 10 *N. E.* 2d 915, 917 (Sup. Ct. 1937); *In re Baker's Estate*, 48 *Misc.* 2d 732, 265 *N. Y. S.* 2d 816 (Sur. Ct. 1965); *cf. McFeely v. Bd. of Pension Comr's, supra*.

In the instant case, however, the merits as to the legal question of entitlement to pension *vel non* are reasonably debatable. See the discussion above. Entertainment by the commission of Ruvoldt's assumption as to the law, given the fact of his genuine disability to try cases, was not an arrantly illegal act. *Cf. Summer Cottagers' Ass'n of Cape May v. City of Cape May*, 19 *N. J.* 493, 504 (1955). Eight years after the original administrative action the course of events cannot be rerun. Had the pension been denied Ruvoldt at the time as legally unwarranted, he could · have tried to obtain employment in non-trial legal work from the county, and, if successful, achieved a right to pension after seven additional years of service pursuant to *N. J. S. A.* 43:10–2 (age of 60 and 20 years of service, not requiring disability). Or he might possibly have been able to muster medical proof that he was unfit to do full-time legal work at all, whether trial or non-trial. We are not assuming he would necessarily have been successful in either of these endeavors. The point is that he lost the chance when the pension was allowed on the at least colorable basis claimed under *N. J. S. A.* 43:10–3. It would be essentially unjust to undo the pension grant so many years later after such circumstances of reliance and irremediable change of position as here manifested. See *Gruber v. Mayor and Tp. Com. of Raritan Tp.*, 39 *N. J.* 1, 13–16, 18–19 (1962).

In view of the foregoing conclusions we are not called upon to consider other points raised by Ruvoldt in defense

of the pension or his alternative claim that if the grant of pension was invalid he is nevertheless now, having passed the age of 60 and served for 20 years, entitled to a pension under *N. J. S. A.* 43 :10–2. But see *Pirher v. Bd. of Public Works of South River,* 37 *N. J. Super.* 482, 484–85 (App. Div. 1955), certif den. 20 *N. J.* 465 (1956). Nor need we express any opinion as to other incidental rulings contained in the determination of the Chancery Division.

Judgment affirmed.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN, and Judge CONFORD—7.

*For reversal*—None.