133 N.J. Super. 99 (1975)
335 A.2d 574
TRAP ROCK INDUSTRIES, INC., A NEW JERSEY CORPORATION, APPELLANT,
v.
ALAN SAGNER, COMMISSIONER OF THE DEPARTMENT OF TRANSPORTATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1975.
Decided March 12, 1975.
*102 Before Judges LORA, HANDLER and TARLETON.
Mr. Justin P. Walder argued the cause for appellant (Messrs. Schapira, Steiner & Walder, attorneys).
Mr. Roy A. Heimlich, Deputy Attorney General argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General of counsel; Mr. Richard L. Rudin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by HANDLER, J.A.D.
On November 23, 1971 the New Jersey Supreme Court decided Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972), wherein it upheld the decision by the Commissioner of Transportation, John C. Kohl, temporarily suspending Trap Rock as a qualified bidder on contracts to be awarded by the Department of Transportation (D.O.T.) until such time as Michael Stavola divested himself of all his interest in the corporation. The suspension was based on an indictment against Michael Stavola for conspiring to bribe and offering a bribe to a member of the State Police to intercede in Stavola's behalf concerning another indictment against him for assault and battery of a police officer and obstruction of justice. As a result of Stavola's later conviction, proceedings to debar Trap Rock were brought before the Commissioner on March 16, 1972 and Trap Rock was barred for a period of five years from bidding or furnishing materials on D.O.T. contracts *103 or on contracts with any political subdivision utilizing state funds, or from entering into any subcontracts for work or materials on such projects. This decision was upheld by the Supreme Court in Trap Rock Industries, Inc. v. Kohl, 63 N.J. 1 (1973).
On June 14, 1973 a hearing was held before the Commissioner to determine whether Michael Stavola had completely divested himself of his interest in Trap Rock and whether the corporation should be reinstated as a qualified bidder on government contracts. Following the hearing the Commissioner rendered a decision upon findings and conclusions and issued a reinstatement order on June 29, 1973.
It is not disputed that Trap Rock thereafter met the pre-qualification standards in accordance with N.J.S.A. 27: 7-35.1 et seq. and D.O.T. regulations, and became authorized or classified as a qualified bidder on state projects in excess of $25,000,000, and since August 1973 engaged in and completed several substantial public projects as a prime contractor and a subcontractor. It is further stated, without dispute, that on July 1, 1974 D.O.T., under its current Commissioner, Alan Sagner, continued Trap Rock's classification as an eligible bidder on public projects for the period July 11, 1974 to July 31, 1975.
On August 8, 1974 D.O.T. received bids for the resurfacing of Route 287. Trap Rock was the lowest bidder at $2,464,161.45 and was awarded the contract. The contract document was sent to Trap Rock on August 30, 1974. It was executed and then returned by Trap Rock to D.O.T. on September 6, 1974 for the Commissioner's signature.
At this time  specifically on September 5, 1974  Trap Rock entered a guilty plea in the United States District Court for the District of New Jersey to a federal indictment which had been returned against the corporation on May 31, 1973. The indictment charged the corporation with unlawfully making a false federal income tax return for the fiscal year ending February 28, 1970. Trap Rock was alleged to have made a payment of $15,000 to former Governor Cahill's *104 political campaign and deducting that payment from its income tax return as an advertising expense. Trap Rock was convicted on its guilty plea and sentenced to pay a fine of $3500.
On September 25, 1974 Trap Rock was instructed by D.O.T's project engineer to discontinue work immediately on the Route 287 project. Two days later, on September 27, 1974, upon informal oral notice a hearing was scheduled for Monday, September 30, 1974. Although there is a controversy as to the expected scope of the hearing, its salient purpose was to determine whether the Commissioner should reject Trap Rock's bid and refuse to execute the contract because of the federal conviction. The authority for this possible action was N.J.S.A. 27:7-35.8, which provides that the Commissioner may reject a bidder at any time prior to the "actual award of a contract, where there have been developments subsequent to the classification of such bidder, which in the opinion of the commissioner would affect the responsibility of the bidder."
At the hearing the view was expressed on behalf of D.O.T that the objective of the proceeding was not only to determine whether the Commissioner should execute the contract relating to the Route 287 project because of Trap Rock's guilty plea to the federal indictment, but also whether Trap Rock should be debarred generally as an eligible bidder. Counsel for Trap Rock took the position that hearing was restricted to the question of whether the contract relating to the Route 287 project ought to be executed by the Commissioner in light of the guilty plea to the federal indictment and with respect to this question, whether the present ownership and management of Trap Rock were in any way responsible for the conduct giving rise to the federal indictment against the corporation.
By letter dated October 9, 1974 the Commissioner informed Trap Rock of his decision not to sign the proposed contract for the Route 287 project and to debar Trap Rock from further bidding on D.O.T. projects. The Commissioner *105 stated that a formal determination would be forthcoming. On November 22, 1974 Commissioner Sagner issued his formal decision debarring Trap Rock from bidding on D.O.T. projects and from subcontracting or supplying materials on any local contract involving D.O.T. funds. He concluded that Trap Rock "lacked the moral integrity necessary to deal" with D.O.T. Necessarily, the Commissioner determined that, under N.J.S.A. 27:7-35.8, the guilty plea was a development subsequent to the classification of Trap Rock as a qualified bidder and that this did affect its responsibility as a bidder.
Trap Rock contends initially that the Commissioner was in error because the indictment to which Trap Rock pleaded guilty had been returned on May 31, 1973, approximately two weeks before the June 14, 1973 hearing before Commissioner Kohl, and that the pendency and circumstances of the federal indictment "were known to and had been considered and rejected by Commissioner Kohl as a basis for debarring Trap Rock."
The record of the June 14, 1973 hearing conducted by Commissioner Kohl is bereft of any reference to the federal indictment of May 31, 1973 or to any of the circumstances surrounding the commission of the federal offense. There is, likewise, no finding of fact or conclusion expressed in the determination of June 29, 1973 or other circumstance which would generate a necessary inference or impel the deduction that the former Commissioner had actually investigated, considered, evaluated and rejected the federal indictment as a factor bearing upon his decision to reinstate Trap Rock as an eligible bidder. Thus, the issue, not having been litigated by the prior administrative decision, should not be foreclosed in a later proceeding. 2 Am. Jur.2d, Administrative Law, § 502 at 314 (1962); cf. 1B Moore's Federal Practice, § 0.443(4) at 3913 (1965). The post-appeal affidavits (which have been included in the appendix but are not properly part of the record on appeal) reveal, at most, private knowledge of the federal charge by the former Commissioner, which is *106 not otherwise disclosed of record in the proceedings before him. This may not, therefore, be relied upon to vary or contradict that record. 2 Am. Jur 2d, supra, § 503 at 315. Consequently, the matters related therein cannot be considered to have been a ground or basis for the prior determination. Cf. Elizabeth Federal S. & L. Ass'n v. Howell, 24 N.J. 488 (1957); Mazza v. Cavicchia, 15 N.J. 498 (1954); N.J. State Bd. of Optometrists v. Nemitz, 21 N.J. Super. 18, 28-29 (App. Div. 1952).
Accordingly, the federal indictment of May 31, 1973, and the guilty plea thereto by Trap Rock on September 5, 1974, were under N.J.S.A. 27:7-35.8 a subsequent development which the Commissioner was entitled to investigate in order to determine its impact upon the present responsibility of Trap Rock as a bidder on D.O.T. projects.
It is clear from the record developed at the hearing below that the present owners and principals of Trap Rock were not personally involved in the activities which were the basis for the federal indictment against the corporation in May 1973. The three witnesses who appeared at the hearing of September 30, 1974, Joseph Stavola, William Stavola and Martin Epstein, through their combined testimony indicated that the present and sole stockholder of Trap Rock is Joseph and William Stavola, Inc.; its directors were Joseph Stavola, William Stavola, George Conway and Melville Keever; and Joseph and William Stavola were its officers. None of these individuals was an officer of Trap Rock in 1969, the time of the events leading to the federal indictment.
The testimony indicated that Joseph and William Stavola had no management decision-making powers in Trap Rock during the fiscal year ending February 1970. Neither Joseph nor William Stavola worked "inside" in a supervisory or managerial position during that period of time. The individuals directly responsible for the unlawful transaction were Michael Stavola and David Mendelson, the former assistant secretary-treasurer of Trap Rock whose connection with the corporation was terminated in December 1972. William Stavola, *107 Joseph Stavola and Martin Epstein testified that they had never communicated with anyone concerning any political contributions to the 1969 Cahill campaign or payments to Writers Associates. All three further confirmed that they had no knowledge that in 1969 a payment had been made by Trap Rock to Writers Associates. Moreover, these individuals had not conferred with Mendelson or Michael Stavola with reference to the decision to enter a guilty plea on behalf of the corporation to the federal indictment.
In the face of essentially uncontradicted evidence, the Commissioner observed:
It seems to me that the guilty plea entered by Trap Rock Industries, Inc. to the Federal indictment and its resulting conviction indicate, at least in the absence of any explanation, that the corporation lacks the moral integrity necessary for it to be considered a responsible entity with which the Department of Transportation should contract. Moreover, it does not seem to me to make sense to say, in the face of a corporate criminal conviction, that if it be shown that the criminal activities of the corporation were directed by persons who no longer control or are associated with it, the stain on the corporate integrity may be ignored or has been eradicated and that the Department of Transportation must deal with the corporation as if it had not been convicted of any offense.
In the converse situation  where the principal of a corporation was individually charged with the commission of a crime  it was held by our Supreme Court that the corporation, as a legal or juridical entity, must be deemed to mirror the moral attributes of the individuals who inspire its actions.
* * * A corporation, as such, has no moral character. The moral responsibility of a corporation is one and the same with the responsibility of the individuals who give it direction * * *. [Trap Rock Industries, Inc. v. Kohl, supra, 59 N.J. at 482]
Cf. Benson Parking Corp. v. O'Connell, 31 Misc.2d 1037, 220 N.Y.S.2d 1010 (Sup. Ct. 1961); Metropolitan Motors v. State, 39 N.J. Super. 208, 213 (App. Div. 1956); Florence *108 Meth. Church v. Florence Tp. Committee, 38 N.J. Super. 85 (App. Div. 1955).
By parity of reasoning, where, as here, corporate derelictions can be isolated and fixed to particular persons, the corporation's lack of moral responsibility in that situation should be synonymous with the moral defects of the responsible individuals. If, as a consequence, the corporation has purged itself of the offending individuals and they are no longer in a position to dominate, manage or meaningfully influence the business and operations of the corporation, the responsibility of the corporation should then be assayed, not upon the moral infirmities of the removed malefactors, but upon the integrity of the persons who remain in ownership and control of it. We hold, therefore, that the Commissioner erred to the extent that he gave determinative weight to the proposition that Trap Rock as a corporate entity must be regarded as lacking in moral integrity because a guilty plea had been entered on its behalf to the charge of a crime, which was itself founded upon the past deeds of individuals no longer associated with the corporation.
The crux of the Commissioner's decision was that one of the individuals responsible for the corporate criminal acts, Michael Stavola, had not disassociated himself sufficiently from the corporation so as to insulate the corporation from his personal lack of integrity. He also concluded that the present corporation, as a legal instrumentality, was the "same" as that which existed in 1969. The questions of the sufficiency of the severance of Michael Stavola from the corporation and, by implication, the continuity of corporate identification, were, as noted, the subject of the administrative proceeding before the former Commissioner in June 1973, and this issue was duly adjudicated by him, after a full hearing, resulting in the reinstatement of Trap Rock as a qualified bidder.
Appellant takes the position that under the doctrines of collateral estoppel or res judicata the present Commissioner was not entitled to engage in a re-examination and a second *109 adjudication of many of the facts and issues previously resolved by the former Commissioner in determining that Michael Stavola had adequately removed himself from the corporation and that Trap Rock was qualified to act as a responsible bidder.
A satisfactory resolution of the issue thus posed cannot be found in any formulaic application of the principles of collateral estoppel or res judicata, or, by analogy, the rules for relief from judgments or grant of new trials governing our courts. R. 4:50; R. 4:49. The application of res judicata, collateral estoppel and kindred doctrines in the setting of an administrative proceeding is tempered by recognition that a particular administrative agency may have continuing regulatory responsibilities over the areas within its jurisdiction. The exercise of some of its supervisory functions in a quasi-judicial manner, such as administrative hearings and adjudications, may be an incident to, rather than the essence of, its primary administrative authority. It is fitting, therefore, that, subject to statutory restrictions, such an administrative agency, in appropriate circumstances, have the power to reassess or reconsider its actions in order to perform fully its responsibilities as a regulatory body. Ruvoldt v. Nolan, 63 N.J. 171, 183 (1973). In this sense, the power to reconsider, to rehear and to revise determinations may be regarded as inherent in administrative agencies. Mackler v. Camden Bd. of Education, 16 N.J. 362, 369 (1954); cf. In re Plainfield-Union Water Co., 14 N.J. 296, 305 (1954). This power to reappraise and modify prior determinations may be invoked by administrative agencies to protect the public interest and thereby to serve the ends of essential justice. Handlon v. Belleville, 4 N.J. 99, 106-107 (1950); see, Trap Rock Industries, Inc. v. Kohl, supra, 63 N.J. at 4-5 ("The Commissioner assures us he will act whenever he has reason to believe that action is warranted.")
It does not follow, however, that in exercising the necessary and appropriate power to reconsider the status of a contractor as an eligible bidder the Commissioner was *110 free to disregard completely issues that were fully and fairly resolved prior thereto. The power to reconsider must be exercised reasonably, with sound discretion reflecting due diligence, and for good and sufficient cause. Ruvoldt v. Nolan, supra; Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, 56 N.J. 579, 600 (1970); Handlon v. Belleville, supra; compare Churchill Tabernacle v. Federal Communications Comm'n, 81 U.S. App. D.C. 411, 160 F.2d 244 (D.C. Cir.1947); cf. Morton v. Clark Tp. Mayor & Council, 102 N.J. Super. 84 (Law Div. 1968), aff'd 108 N.J. Super. 74 (App. Div. 1969); 2 Am. Jur.2d, Administrative Law, § 2.28 (1962); also, Jaffee, Judicial Control of Administrative Action, c. 19 at 715-720 (1965).
Merely because the Commissioner has  and should exercise  the power to reappraise the eligibility of a qualified contractor in light of meaningful subsequent developments, as he is authorized to do by virtue of N.J.S.A. 27: 7-35.8, does not mean that a relitigation of previously resolved issues is fair, appropriate or necessary. Even in the context of a reopened hearing in an administrative agency proceeding there is a proper use of res judicata or, more precisely, collateral estoppel. These principles should be invoked discriminately to serve the ends of administrative justice. Cf. Lubliner v. Paterson Bd. of Alcoholic Beverage Control, 33 N.J. 428, 437-438 (1960); 2 Cooper, State Administrative Law, 507 (1965). A balancing of such factors as new developments or even new evidence of old developments, the advantages of repose, party reliance, the thoroughness of the earlier decision and the showing of illegality, fraud, mistake and the like should be considered, 2 Davis, Administrative Law Treatise, § 18.09 at 607 (1958); also, Ruvoldt v. Nolan, supra.
In reaching his decision Commissioner Sagner reviewed and relied upon the evidence presented at the prior hearing. This included Michael Stavola's testimony that in the event of default he would sue on the promissory notes and would not try to recover his stock. The Commissioner reasoned *111 that nothing in the agreement, which had since been executed, prevented Michael Stavola, in the event of a default, from recovering his stock in Trap Rock by obtaining a judgment against Joseph and William Stavola, Inc. and then, in order to satisfy his judgment, by levying on the stock. This conclusion, however, was clearly speculative and directly contrary to the conclusions reached by Commissioner Kohl on the same evidence. There was, moreover, no basis for any suggestion that the divestment of Michael Stavola had not in fact occurred in accordance with earlier representations and the closing documents. And, as pointed out by the appellant, there is adequate power in the Commissioner to take prompt remedial action in the event Michael Stavola attempted to reacquire ownership or control of the corporation. Cf. Trap Rock Industries, Inc. v. Kohl, supra, 63 N.J. at 4-5.
Commissioner Sagner also considered the status of Martin Epstein as the independent accountant for Trap Rock, the Michael Stavola enterprises, and the individual Stavolas. Epstein was characterized as "a link in the chain of continuity between Trap Rock Industries, Inc., which was controlled by Michael J. Stavola and the present Trap Rock Industries, Inc." There was, however, no finding of culpability on the part of Epstein. Nor was it demonstrated that Michael Stavola has exercised, through Epstein, any meaningful control or influence over the business operations of the corporation.
We similarly view the consideration given by the Commissioner of the fact that Melville Keever was on Trap Rock's board of directors at the time Michael J. Stavola owned the corporation, and continued as a director at the time of the hearing.[1] Keever, according to the testimony, remained on the board in order to assist in the transition of the corporation and because of her experience in management procedures *112 and her familiarity with the business of the corporation. No evidence was presented at the hearing to support the inference drawn by the Commissioner that Keever was Michael Stavola's nominee on the board of directors of Trap Rock.
Commissioner Sagner made reference in his opinion to the land and equipment leases by Trap Rock from Delaware River, a company wholly owned by Michael J. Stavola. It was noted that the rental charges for both the equipment and the land leased by Trap Rock from Delaware River had not increased in the time period of approximately 14 months between the decision of Commissioner Kohl and the hearing of September 30, 1974 and, therefore, fair rental value was not being paid by Trap Rock to Delaware River.
The relationship between Michael Stavola, Delaware River and Trap Rock, however, was treated by Commissioner Kohl. There was no substantial new evidence adduced at the hearing below to demonstrate that fair rentals were not in fact being paid by Trap Rock for the equipment and land leased from Delaware River. It was also emphasized that Michael Stavola personally owned the land upon which Trap Rock's executive offices are located and that, since late 1972 or early 1973, Trap Rock has paid rent therefor under a new lease. That factor, however, in the context of Trap Rock's overall relationship with Michael Stavola and Delaware River, while relevant, does not add significantly to the evidence considered by Commissioner Kohl.
In sum, it does not appear that any of the additional evidence presented to or considered by the Commissioner in the proceedings below, as it related to the relationship between Michael J. Stavola and Trap Rock, was significant or substantial when compared with evidence before Commissioner Kohl. Nor has it been shown that the evidence in the prior proceedings was not adequately developed and carefully evaluated in reasonable measure in relation to the issues to be determined therein. What is revealed by the record here is that the current Commissioner views the *113 matter in a different and stricter light than his predecessor. The determination of the former Commissioner, however, has not been shown to have been illegal, mistaken, careless or the product of ignorance, or influenced in the slightest by fraud or deception. We do not perceive, therefore, under all of the circumstances, good cause to justify a recanvassing and reconsideration by the Commissioner of the factual issues resolved in the previous proceedings, or to sanction the reversal of the earlier determination that Michael Stavola had removed himself sufficiently from the corporation and was no longer in a position to dominate or influence the corporation's business activities, and that Trap Rock, accordingly, was, from the standpoint of moral responsibility, eligible to engage in business with D.O.T. as a qualified bidder.
It is also argued by Trap Rock that the Commissioner failed to give sufficient notice of the scope of the hearing and, more particularly, it was not made aware that the matters specifically determined by Commissioner Kohl would be the subjects of inquiry before the Commissioner. It is asserted that because it was unable to prepare and marshall evidence on these issues, it was denied due process. Appellant was not entitled to a detailed recitation of the acts and omissions which would support the Commissioner's claim of a lack of moral responsibility. Cf. Trap Rock Industries, Inc. v. Kohl, supra, 59 N.J. at 485-486. Nevertheless, it was entitled to be forewarned of the theory upon which the Commissioner was proceeding and a reasonable opportunity to confront the assertions against it. N.J.S.A. 27:7-35.8; N.J.A.C. 16:65-1.2(m); cf. Mal-Bros. Contracting Co. v. Kohl, 113 N.J. Super. 144, 147 (App. Div. 1971). In light of our decision, however, the issue need not be further addressed.
Appellant raises certain other questions. It is argued that under principles of equitable estoppel the Commissioner was precluded from determining to debar Trap Rock generally as well as refusing to execute the contract for the Route 287 *114 project. This position is based upon Trap Rock's reliance in good faith upon the prior determination of June 29, 1973 reinstating it as a qualified bidder, as a result of which it incurred substantial financial obligations; and further that, despite D.O.T. standard specifications § 1.3.1 that an award is not binding until the contract has been executed by the Commissioner, Trap Rock had commenced the work under its contract with the approval of and under the supervision of the Commissioner and D.O.T.
An additional contention is that the decision of the Commissioner is contrary to the explicit provisions of N.J.S.A. 27:7-35.8, which enables the Commissioner to reject a bid only if this is prior to the actual award of the contract; and none of the circumstances which occasioned the rejection of the bid entailed developments which occurred subsequent to Trap Rock's qualification as an eligible bidder or affected adversely its responsibility as a bidder. Finally, it is asserted that the determination of the Commissioner to debar Trap Rock was arbitrary and fundamentally unfair.
Because of the grounds developed in this opinion, we consider it unnecessary to resolve these additional contentions.
Accordingly, the decision of the Commissioner in refusing to execute the contract and in debarring appellant is reversed.
NOTES
[1] We are informed that Ms. Keever has terminated her relationship with Trap Rock.