HIGHWAY TRAILER COMPANY, A CORPORATION, PLAINTIFF-APPELLANT, v. DONNA MOTOR LINES, INC., A CORPORATION OF NEW JERSEY, DEFENDANT, AND MOUNT VERNON FIRE INSURANCE COMPANY, AN INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued December 12, 1965—Decided March 7, 1966.

*Mr. Charles N. Kors* argued the cause for the plaintiff-appellant (*Messrs. Kors & Rubin,* attorneys).

*Mr. Edward G. D'Alessandro* argued the cause for the defendant-respondent (*Messrs. Friedman & D'Alessandro,* attorneys; *Mr. Louis M. Minotti* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This appeal concerns the rights of a loss payee under a theft insurance policy.

In October 1960 the plaintiff, Highway Trailer Company (Highway), sold a trailer to Donna Motor Lines, Inc. (Donna) for $14,430.86. Donna made a small down payment and Highway retained a security interest in the trailer through a conditional sale contract. The balance due was to be paid in monthly installments. Before delivery to Donna, Mount Vernon Fire Insurance Company (Mount Vernon), the defendant, issued a fire and theft policy covering the trailer. This policy named Donna as the insured and also contained the following provision: "Loss Payee: Any loss hereunder is payable as interest may appear to the insured and Highway Trailer." In early December, before the first installment payment had been made by Donna, the trailer disappeared from a parking lot in Chicago. Highway did not receive any further payments from Donna and on June 26, 1961, brought an action against Donna for the balance due under the conditional sale contract and against Mount Vernon upon its policy covering the theft of the trailer. Judgment against Donna was entered by default. Highway's claim against Mount Vernon was tried in the Law Division without a jury. The trial judge found that the trailer was stolen. However, he also found that Donna, the named insured, had failed to file a proof of loss as required by the policy [1] and that com-

---

[1] The policy provides:

"(1) Insured's Duties When Loss Occurs: When loss occurs the insured shall:

    \*       \*       \*       \*       \*       \*       \*

    (c) file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement of the insured setting forth the interest of the insured and of all others in the property affected,

pliance with this requirement had not been waived by Mount Vernon. He held that Highway, as a loss payee, had no greater rights than the insured and, since Donna had committed a breach of the policy which would preclude its recovery against Mount Vernon, Highway was similarly barred. Highway appealed and the judgment of the trial court was affirmed by the Appellate Division. We granted Highway's petition for certification. 45 *N. J.* 590 (1965).

The trial judge made detailed findings of fact which are not disputed by either of the parties on this appeal. In late November 1960 Donna's trailer made its first run, hauling cargo from Jersey City to Chicago. It arrived in Chicago on Friday, November 30, and was unloaded by the driver and left in a parking lot for the weekend. On Monday, December 3, the driver discovered that the trailer was missing from the lot and he immediately notified the police and the Federal Bureau of Investigation. The value of the trailer at the time of the theft was $13,000, an amount less than Donna's outstanding debt to Highway under the conditional sale contract. No part of Highway's default judgment against Donna has been satisfied.

On December 16, 1960 Lawrence Charron, the president of Donna, personally reported the loss to Frank Walsh, the general agent of Mount Vernon.[2] At about the same time Charron also notified James O'Shea, the sales manager of High-

---

any encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss, the amount of rental or other expense for which reimbursement is provided under this policy, together with original receipts therefor, and the description and amounts of all other insurance covering such property.

\*   · \*     \*     \*     \*     \*     \*     \*

(5) Payment for Loss; Action Against Company; Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

[2] It was conceded at the trial that Walsh and Mount Vernon "are practically one."

way, that the trailer had been stolen. Sometime before Christmas 1960, O'Shea telephoned Walsh to discuss the loss. In that conversation Walsh asked O'Shea for a copy of the sales order and the conditional sale contract, both of which were subsequently sent to Walsh's office. During that same conversation O'Shea inquired if all the conditions of the policy had been met. Walsh replied that everything as of that time was in order.

The trial court further found that about January 1, 1961, Charron telephoned Walsh to inquire about the status of the claim. Walsh informed him that he was going to Chicago to personally investigate the theft. Early in January Walsh spent four days in Chicago checking into the facts surrounding the disappearance of the trailer, and as a result of his investigation he became suspicious of the legitimacy of the loss. Because of his suspicion he decided to take no further action on the claim, in his own words to "stand pat." [3] However, the trial court specifically found that at no time before the trial did Walsh ever indicate to O'Shea or any other representative of Highway that he suspected the genuineness of the theft.

Between January and May of 1961 O'Shea had several conversations with Walsh in which he attempted to find out why there was a delay in settling Highway's claim. In each instance Walsh told him that the matter was still under investigation. During these conversations Walsh also discussed with O'Shea the price of a replacement for the missing trailer. At the last conversation Walsh inquired if Mount Vernon would receive a price reduction if a replacement trailer were purchased from Highway. He stated that other-

[3] "THE COURT: * * * You were going to stand pat on the claim. Now, what did you mean by that phrase 'stand pat on the claim'?

The Witness [Walsh]: That I would not of my own volition tender any offer of settlement; neither would I deny on the claim until further proof was presented to me as to the legitimacy of the loss.

Q. This was an interpretation of the state of mind of yourself. Is that correct? A. Yes.

Q. This was not verbally said by you to anyone? A. No, sir."

wise he could probably obtain a trailer equivalent to the missing one from another company at a lower price. O'Shea said that Highway would not reduce its price and that the matter was being referred to an attorney.

In early May 1961 Donna's attorney, John Wygant, asked Walsh when Donna's claim would be satisfied. Walsh replied that a proof of loss would have to be filed with Mount Vernon before payment could be considered and he sent Wygant the necessary form with instructions that the executed proof of loss be returned "at your earliest convenience." Proof of loss was never filed by Wygant or Donna, and Wygant died in August 1961.[4] However, there is no suggestion in the record that O'Shea or any other representative of Highway was aware that Walsh requested Wygant to file a proof of loss.

Although much of the testimony at the trial concerned Walsh's suspicion that a real theft had not occurred, the trial court found that the loss was genuine. Mount Vernon does not challenge this finding.

The trial court and the Appellate Division found that Donna, by failing to file a proof of loss as required by the policy, would not have been able to recover against Mount Vernon. They also found that Highway's rights under the policy were those of a simple loss payee. Both courts then applied the general rule that a payee under a loss payable clause (as distinguished from a standard mortgagee clause) is a mere appointee who may not recover if the insured has breached any provision of the policy which would prevent recovery by him. *E.g., Hanson v. National Liberty Fire Ins. Co. of America,* 100 *N. J. L.* 215 (*Sup. Ct.* 1924) ; 5 Appleman, *Insurance* §3335 (1941) ; Annotation, 38 *A. L. R.* 367

---

[4] The trial court did not consider relevant the evidence concerning Walsh's dealings with Wygant because it found no proof that Wygant had been retained to represent Donna in its negotiations with Mount Vernon. Although the Appellate Division found the evidence sufficient to establish that Wygant did in fact represent Donna and that Mount Vernon did extend the time for filing the proof of loss, it affirmed the trial court because Donna at no time filed a proof of loss.

(1925). In short, both courts held that since Donna had no rights against Mount Vernon, Highway had none.

We accept the finding that Donna would be barred from any recovery under the terms of the policy. However, we think that the rule of law stated above was misapplied by the trial court and the Appellate Division to the facts of this case.

■ It is true that ordinarily the rights of a loss payee are derivative and cannot exceed those of the insured. *Hanson v. National Liberty Fire Ins. Co. of America, supra.* But it is also true that a loss payee acquires independent "equitable rights, which the insurer is bound to regard." *Martin v. Franklin Fire Insurance Co.*, 38 *N. J. L.* 140, 143 (*Sup. Ct.* 1875). Not only did the policy issued by Mount Vernon name Highway as a loss payee, but soon after the theft of the trailer O'Shea sent Walsh, at his request, a copy of the sales order and the conditional sale contract. Thus, Mount Vernon was fully aware that Donna had paid only a small part of the purchase price and that Highway had the major, if not the sole, interest in the proceeds of the policy. Yet at no time did Mount Vernon give the slightest indication to Highway that there was any defect in the formal presentation of the claim or that its reason for delaying settlement was a suspicion concerning the legitimacy of the loss. When O'Shea first communicated with Walsh, he asked if all the conditions of the policy had been met and Walsh told him that everything as of that time was in order. In subsequent conversations Walsh never said or did anything to change that impression. Indeed, at those later occasions when O'Shea inquired why the claim had not been settled, he was informed that the need for further investigation was the sole cause of delay. In fact, at the times of these later inquiries Walsh had already completed his investigation and had decided to "stand pat on the claim."

■ ■ We think that under the doctrine of equitable estoppel Walsh's conduct precludes Mount Vernon from asserting against Highway any rights which might have otherwise arisen from Donna's failure to file a proof of loss:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." 3 *Pomeroy's Equity Jurisprudence* (*5th ed.* 1941) § 804.

See also *State v. United States Steel Corp.*, 22 *N. J.* 341, 358 (1956) ; *Bayonne v. Passaic Consolidated Water Co.*, 98 *N. J. Eq.* 174, 177 (*Ch.* 1925).

█ The pattern of Walsh's conduct was designed to lead Highway to believe that all the conditions of the policy, on which Mount Vernon was going to insist, had been met and that settlement merely awaited the completion of the insurer's investigation. Had Highway been aware that a proof of loss was not filed by Donna or that Mount Vernon intended to demand the filing of such a document, it could have taken appropriate steps to protect its interests. In these circumstances Mount Vernon should not be permitted to benefit from the very condition in the policy which Walsh's conduct led Highway to believe was already fulfilled or was of no significance to the ultimate settlement of the claim. We hold that where, as here, the insurer knows that the loss payee of a theft insurance policy has a vital interest in the claim and by its conduct leads the loss payee reasonably to believe that the claim has been adequately presented, thereby lulling the loss payee into inaction, the insurer is estopped from asserting any defect in the presentation of that claim. See *State Insurance Co. v. Maackens*, 38 *N. J. L.* 564, 569 (*E. & A.* 1876) ; *Bank of Oroville v. Minnesota Fire Ins. Co.*, 132 *Cal. App.* 510, 23 *P. 2d* 83 (*Dist. Ct. App.* 1933) ; *cf. N. J. S. A.* 17 :36–6.

For the reasons stated above the judgment below is reversed and the matter is remanded to the trial court with directions to enter a judgment for the plaintiff, Highway Trailer Company, against the defendant, Mount Vernon Fire

Insurance Company, in the amount of $13,000, together with interest.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and HALL—5.

*For affirmance*—None.