137 N.J. Super. 335 (1975)
349 A.2d 86
HARRY INDURSKY, APPELLANT,
v.
BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, DIVISION OF PENSIONS OF THE DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1975.
Decided November 24, 1975.
*337 Before Judges CARTON, CRAHAY and HANDLER.
Mr. Sanford Schneider argued the cause for appellant (Messrs. De Rose, Spinrad & Schneider, attorneys).
Mr. Samuel J. Halpern, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Theodore A. Winard, Assistant Attorney General, of counsel).
The opinion of the court was delivered by CRAHAY, J.A.D.
This appeal is addressed to the propriety of a final action by respondent Board of Trustees (Board) which held that appellant pensioner was not entitled to disability pension benefits in "the years 1967 through March 31, 1973." The Board demanded from the pensioner a return of a "total overpayment" in the amount of $5,302.32 for the involved years.
Our review of the record satisfies us that the challenged action was not warranted and we reverse.
The record is entirely documentary and reflects no meaningful factual dispute. In view of our disposition we deem it appropriate to detail the operative chronology.
In 1950 appellant Indursky was permanently appointed to the position of counsel to the Jersey City Housing Authority (Authority) at an annual salary of $4,000. In *338 1955 he applied for membership in the Public Employees' Retirement System (PERS) and was accepted in it, purchasing, for $1,217.64, credit back to the commencement date of his employment.
On various dates in November 1964 appellant formally applied to PERS for ordinary disability retirement; certified his final salary at $4,550 a year; stated his disability to be the result of a myocardial infarction, and supplied a report of his personal physician which essentially attested that appellant suffered an acute myocardial infarction in 1954 and that he was permanently disabled and incapacitated from the performance of his duties.
In December 1964 the official physician for PERS reported that appellant was totally and permanently incapacitated as the result of arteriosclerotic heart disease, noting the 1954 infarction. In response to an inquiry by respondent's secretary the medical panel of PERS reported that it "believes that he [appellant] should be considered totally and permanently incapacitated."
In January 1965 respondent wrote appellant, advising that his retirement application was being reviewed and sought additional information, specifically, whether he intended to continue in private law practice and, if so, what would be his estimate of his annual income. Answering, appellant expressed surprise at the inquiry but stated (1) his intention to continue his law practice, although not on a full-time basis and (2) his inability to estimate his income from it.
In February 1965 appellant resigned as counsel for the Authority. He was advised by PERS that his retirement application had been approved. Appellant was informed that the approval would be retroactive to December 1, 1964 and that his maximum monthly benefit would be $95.63, subject to a reduction when he became eligible for Social Security benefits. It was stated that under the provisions of N.J.S.A. 43:15A-44
* * * the Board of Trustees may require any disability beneficiary who is under age 60 years to undergo medical examination *339 once each year. It further provides that should it be found that the beneficiary is engaging in or able to engage in a gainful occupation, the amount of his pension shall be reduced to an amount which, when added to the amount then earnable by him, shall not exceed the amount of his final compensation.
It should be noted here that in 1965 the relevant portion of the cited statute actually required that
Once each year the board of trustees may * * * require any disability beneficiary who is under the age of 60 years to undergo medical examination by a physician * * * If the physician * * * thereupon report and certify to the board that the disability beneficiary is not totally incapacitated * * * for the performance of duty and that he is engaged in or is able to engage in a gainful occupation, * * * then the amount of his pension shall be reduced to an amount which, when added to the amount then earnable by him, shall not exceed the amount of his final compensation. * * * [N.J.S.A. 43:15A-44, emphasis supplied]
In April 1965 PERS sent a formal notice of retirement to appellant with a monthly benefit of $95.63. (The form stated that the allowance would be reduced $34.83 a month in 1978 when Indursky would be eligible for Social Security benefits.)
On February 21, 1966 respondent addressed a form letter to appellant advising that it was making an annual survey of its pensioners to determine their then disability status. N.J.S.A. 43:15A-44 was alluded to and the pensioner was requested to complete an enclosed form to determine whether a further physical examination should be made. It was stated that failure to comply with the request might result in suspension of benefit payments. While it is of no consequence, we have not been provided with the form nor does it appear that Indursky responded to the request. In any event, payments continued.
On June 8, 1966 the Legislature amended the act governing the Public Employees' Retirement System. N.J.S.A. 43:15A-44, in its portions pertinent to this litigation was changed thus:
*340 Once each year the board of trustees may, * * * require any disability beneficiary who is under the age of 60 years to undergo medical examination by a physician. * * * If the physician * * * thereupon report and certify to the board that the disability beneficiary is not totally incapacitated * * * for the performance of duty, or if he is engaged in an occupation, then the amount of his pension shall be reduced to an amount * * * [L. 1966, c. 67, § 5, emphasis supplied]
It will be seen that under the prior act, in order for there to be a reduction in benefits it must appear that a pensioner was at the same time not totally incapacitated and engaged in a gainful occupation. Under the 1966 amendment, as we read it, benefits might be reduced even if total disability continued, on a showing that the pensioner was gainfully employed.
On November 9, 1967 Indursky was requested to report for a physical examination to Dr. Norval Kemp and on the same date Dr. Kemp was requested to conduct the examination and give his "opinion as to whether or not this individual is still incapacitated for the performance of his former duties." Dr. Kemp's responsive comprehensive report, rendered on January 12, 1968, concluded: "Mr. Indursky is still incapacitated for the performance of his former duties." Shortly thereafter respondent's medical panel joined in the finding of continuing incapacity.
On March 4, 1968 respondent sought of Indursky a response to an earlier request for a gross earnings report, threatening a suspension of benefits if the form was not received by March 15, 1968. On March 10, 1968 appellant returned the form which stated that he was gainfully employed as a lawyer and that his gross earned income for the year ending December 31, 1967 was $15,000 but adding, "Before office rent, telephone, salaries, stationery, stamps etc." In a covering letter Indursky reminded PERS that his prior employment with the Authority was part-time and that his income from his private law practice was considerably below that which he had enjoyed before his coronary attack. He stated that he would appreciate hearing from the System *341 as to whether he could expect continuance of his pension. The response to that inquiry, made on April 24, 1968, was that
* * * Your letter of March 10, 1968 was presented to the Board of Trustees for their consideration.
The Board requested a legal opinion in this matter and held decision pending an opinion from the Attorney General's office.
We will advise you when the Board takes action in this matter.
We pause now to observe, and we will note again, that almost six full years passed before "action" was taken in the matter. During that hiatus the following transpired.
Disability payments were made, and on June 24, 1968 respondent's medical panel advised it that Indursky was "totally incapacitated" and that "further annual examinations would not appear to be necessary."
In each year, from 1969 to 1973 inclusive, appellant certified, on forms supplied by respondent, as to his prior year's earnings. The forms all recited that he was gainfully occupied as a self-employed lawyer and that his gross earnings were: 1968  approximately $15,000; 1969  $25,000; 1970  $30,000; 1971  approximately $30,000 and 1972  approximately $40,000.
On April 1, 1974 the action promised almost six years earlier was addressed to Indursky by letter from the secretary of PERS, pertinently advising:
I believe that you are aware that for some time we have had before the Attorney General's office the question of whether a disability pensioner earnings for full time employment should be considered in full even though the retired member worked in a part time position.
The Attorney General's office has ruled that the system must consider the total earnings of the disability pensioner regardless of the nature of his former employment.
On the basis of this opinion, the Board of Trustees found that, and under the provisions of R.S. 43:15A.44, you were not entitled to receive a pension in the years 1967 through March 31, 1973 at which time you had passed age 60.
The allowance which you have been receiving is composed of 2 benefits, the pension and an annuity. Only the pension portion of *342 the allowance is in concern. The initial allowance granted $95.63 represented a pension of $70.52 and an annuity of $25.11.
The Board of Trustees is, therefore, obligated to correct this discrepancy and discontinue any additional payments until this matter is settled. Our records show that the total overpayment amounts to $5,302.32.
We would like to settle this matter in order that we may reinstate your name to the pension payroll. Please forward your check in the above amount. [Emphasis supplied]
It is from that action that this appeal is generated. Various issues are presented but we deem but two necessary for discussion and disposition. (We are satisfied that appellant, although a parttime employee, was covered by the act, N.J.S.A. 43:15A-7, and that appellant's argument that a constructed weekly wage must be determined in order to calculate "the salary now attributable" to his former position is, on this record, without merit.)

I
Appellant includes in his arguments that the Legislature, in amending N.J.S.A. 43:15A-44 in 1966, did not intend to deprive incapacitated disability pensioners of benefits merely by virtue of their ability to earn income from other employments. We disagree. As suggested earlier, we are satisfied that the contrary legislative intention was manifest. Appellant from 1964 has always been certified medically to be totally incapacitated from performing his duties as counsel to the Authority. Prior to the 1966 amendment that fact alone precluded any diminution of his benefits. The amendment in clear terms permitted a reduction until age 60, by formula, of benefits when either (1) the pensioner was certified to be less than totally incapacitated or (2) gainfully engaged in an occupation. We cannot see, as appellant urges, any ambiguity created by the 1966 amendment by the elimination of the word "and", and the substitution of "or". Rather, we perceive by that action a legislative desire to alter the conditions under which PERS could reexamine benefits and reduce them if factually indicated. In our view the *343 amendment was simply a legislative recognition that not all disability pensioners necessarily suffer from a lack of earning capacity. By it we deem that the Legislature sought to avoid seemingly arbitrary treatment between pensioners who were engaged in gainful employment and certified as totally incapacitated from the performance of prior duties, and those similarly employed but not so certified.

II
Notwithstanding that appellant's earnings after the 1966 amendment were such as to allow a downward modification of his disability benefits, we conclude that to do so on this record, and require reimbursement, would be inequitable and unwarranted.
In New Jersey it is now settled that, absent legislative restriction, administrative agencies have the inherent authority to reopen and modify previous orders. Ruvoldt v. Nolan, 63 N.J. 171, 183 (1973). That authority, however, is bounded by a requirement that such administrative action be reasonably and diligently undertaken. Skulski v. Nolan, 68 N.J. 179 (1975). In determining whether administrative action has been taken within a reasonable time or with reasonable diligence, we are instructed to consider as factors: (1) whether there was fraud or illegality in the original action; (2) whether the beneficiary of the action contributed to any illegality or fraud, and (3) the extent of reliance or change in position by parties affected by the modifying action. Ruvoldt, supra, 63 N.J. at 183. Applying those factors to this record we conclude that respondent's challenged action was patently unreasonable.
The original grant of benefits to appellant was neither illegal nor fraudulently obtained. We see nothing in his conduct before or after the original grant and the 1966 amendment to N.J.S.A. 43:15A-44 from which it can be fairly concluded that he contributed to the failure by respondent to timely seek a modification of the original grant. He did essentially *344 everything the Board asked of him, and indeed questioned whether the continuance of his benefits would be dependent on his prior part-time employment status. He was routinely paid the benefits. In 1973 he turned age 60 and was then in a sense free from the operation of the reduction statute. Over a year later he was advised to return all pension benefits, and this, we repeat, almost six years after he was told that he would be advised of his pensions' status. We cannot say that his inquiry of 1968 to respondent 
* * * whether a disability pensioner'[s] earnings for full-time employment should be considered in full even though the retired member worked in a part-time position.
was frivolous even though we would have answered it adversely to him. Nor was it designed in any way to lull respondent into improvidently continuing benefit payments. We are satisfied that he plainly relied on the payments he thought his due. Every equity in this record predominates in appellant's favor, Skulski, supra, 68 N.J. at 198, and to the end that respondent may not now claim a return of benefits. We deem it to have been the obligation of respondent to have inquired into Indursky's liability for reduced benefits when alerted to his "outside" earnings, and this with reasonable diligence. See In re Arndt, 67 N.J. 432 (1975). Clearly, that obligation was not honored here.
As in Skulski, supra, 68 N.J. at 208, we are of the view that, under the circumstances of this case, "it would be unduly punitive, unfair and unjust" for respondent to recoup the benefits paid to appellant pensioner over a six year period, particularly where we perceive an untoward lack of diligence on its part and nothing meaningful in the pensioner's conduct diluting the equities reflected in his favor.
The action under review is reversed.