179 N.J. Super. 473 (1981)
432 A.2d 560
VERA MILLER ET ALS, PLAINTIFF-APPELLANT,
v.
BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND ANNUITY FUND, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1981.
Reargued June 9, 1981.
Decided June 29, 1981.
*474 Before Judges FRITZ, POLOW and JOELSON.
John B. Prior, Jr., argued the cause for appellant (Greenberg & Mellk, attorneys).
William P. Malloy, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General, attorney).
The opinion of the court was delivered by POLOW, J.A.D.
All eight petitioners are retired teachers receiving pension benefits from the Teachers' Pension and Annuity Fund (TPAF). *475 Four of them had been employed by the Delaware Valley Regional High School Board of Education (Delaware Valley) and the others by the Greenwich Township Board of Education (Greenwich). All had received additional pay for electing early retirement pursuant to contract. As a result, petitioners' pensions were increased in proportion to the increases in their average annual salaries for their last three years of employment as was duly approved by respondent Board of Trustees of TPAF. At the time their pension applications were approved, two of the petitioners were just under 60 years of age. All of the others were well into their sixties. All eight had completed long years of service. After TPAF approval, petitioners terminated their employment accordingly, some as early as July 19, 1971 and some as late as July 1977, and all received pension benefits as anticipated.
On May 16, 1979 the Supreme Court rendered its decision in Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Ed., 79 N.J. 574 (1979), which, according to respondent, effectively voided pertinent provisions of the agreements under which petitioners had retired. Accordingly, respondent concluded that neither school board had "statutory authority for the payment of added remuneration as an inducement for retirement." Therefore, "a reduction in salary credit ... [and] a corresponding return of pension and insurance contributions ..." was ordered, thus reducing the retirement allowances payable to each petitioner, prospectively. Although we are satisfied that the Delaware Valley and Greenwich retirement remuneration programs as contained in the teachers' associations' collective negotiations agreements with both school boards are invalid under Fair Lawn, we also conclude that the trustees are equitably estopped from reopening the pension allowances previously approved, petitioners having irrevocably changed their positions following such approval, in reliance thereon and to their substantial detriment.
The Delaware Valley collective negotiations agreement contained the following provision:

*476 Any teacher who states in writing that he will retire in three (3) years shall receive an additional $500 above [the negotiated salary] scale for the three (3) years before his retirement.
The Greenwich contract contained the following clause:
Any member of the Staff will receive a $300 increase for any one of the following reasons, but for one reason only:
1) After 15 years in the district and within 7 years of retirement a teacher shall receive $300 additional salary provided proper notification is given to the Superintendent. Such notification shall be given prior to November 1 preceding the year for such adjustment.
2) After 20 years teaching experience and within 7 years of retirement a teacher shall receive $300 additional salary provided proper notification is given to the Superintendent. Such notification shall be given prior to November 1 preceding the year for such adjustment.
All petitioners gave appropriate notice in accordance with their negotiated agreements, received additional compensation for their final years and were awarded retirement allowances based upon average annual compensation for the final three years of employment. N.J.S.A. 18A:66-43(a).
Both boards of education and all petitioners insist that the additional compensation was not intended to induce their retirement but rather to reward them for long and faithful service. We agree with the trustees that the cited contractual provisions are nevertheless unlawful under Fair Lawn. "[A]ctions taken by a state agency which may substantially affect retirement age and thus the actuarial assumptions of a statutory pension system are impermissible unless clearly and unequivocally authorized by the Legislature." 79 N.J. at 582. Nevertheless, all of the petitioners herein having irrevocably changed their positions in reliance on TPAF approval granted almost two years before Fair Lawn for some and up to eight years earlier for others, the interest of justice mandates application of the doctrine of equitable estoppel.
Equitable estoppel is generally defined as
... "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." [Highway *477 Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449 (1966), cert. den. sub nom. Mount Vernon Fire Ins. Co. v. Highway Trailer Co., 385 U.S. 834 [87 S.Ct. 77, 17 L.Ed.2d 68] (1966), quoting 3 Pomeroy's Equity Jurisprudence (5 ed. 1941), § 804.]
The doctrine is intended to prevent a party's disavowal of prior conduct if such repudiation would frustrate the demands of justice and good conscience. Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979). Equitable estoppel arises from one's "conduct," which necessarily encompasses spoken or written words, positive acts, and silence or a negative omission to act. State v. United States Steel Corp., 22 N.J. 341, 358 (1956). Estoppel is properly invoked where "conduct, either express or implied, ... reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." Dambro v. Union Cty. Park Comm'n, 130 N.J. Super. 450, 457 (Law Div. 1974) (emphasis added). Equitable estoppel is not based upon "subjective intent but rather on the objective impression created by the actor's conduct." Ibid. Inasmuch as the basis for equitable estoppel is the preclusion against speaking contrary to one's own act or deed, West Jersey Title v. Industrial Trust Co., 27 N.J. 144, 153 (1958); Anske v. Palisades Park, 139 N.J. Super., 342, 348 (App.Div. 1976), it is not essential to application of the doctrine that the act was fraudulent or intentionally misleading.
Although there exists a general reluctance to apply equitable estoppel against a government agency, Boyd v. Institutions & Agencies Dep't, 126 N.J. Super. 273, 275 (App.Div. 1974), certif. den. 65 N.J. 281 (1974), it may be invoked "against public bodies where the interests of justice, morality and common fairness dictate that course." Anske v. Palisades Park, supra at 348. See Gruber v. Raritan, 39 N.J. 1, 13 (1962).
Although "administrative agencies have the inherent power to reopen or to modify and to rehear orders ... [such] power must be exercised reasonably and application seeking its exercise must be made with reasonable diligence." Ruvoldt v. Nolan, 63 N.J. 171, 183 (1973). That which constitutes reasonable diligence depends upon

*478 ... the interplay with the time element of a number of other attendant factors, such as the particular occasion for administrative reexamination of the matter, the fraud or illegality in the original action and any contribution thereto or participation therein by the beneficiary of the original action, as well as the extent of any reliance or justified change of position by parties affected by the action. [Id. at 183-184]
As did the Supreme Court in Ruvoldt, we conclude that "[i]t would be essentially unjust to undo the pension grant ..." after reliance and unalterable change of position. Id. at 185. Although most of the petitioners here had been receiving their pensions for a shorter period of time than Ruvoldt, their ages and circumstances of reliance manifests for each an irremediable change of position.
We cannot agree with the State's argument that the circumstances are more analagous to Indursky v. Public Employees Retirem. Sys., 137 N.J. Super. 335 (App.Div. 1975). There, we reversed an order requiring reimbursement of prior pension overpayments. Still, in that opinion it was implicitly recognized that the public employees retirement system is free to reduce disability pensioners benefits prospectively pursuant to a statutory provision requiring persons under 60 years of age to be reexamined once a year to determine whether the previous total disability has continued, or, if not, whether the pension benefits should be reduced. N.J.S.A. 43:15A-44. Obviously, the "precedent" is not "helpful" as the State suggests. It is inapposite. Here, there is no statutory authority for annual reconsideration of the allowance. In Indursky, the pensioner knew before retirement that he was subject to annual medical examination until he reached 60 years of age and a possible reduction in his retirement allowance.
Skulski v. Nolan, 68 N.J. 179 (1975) dealt with 57 pensioners whose previously granted disability pensions were discontinued by a court appointed receiver for the Hudson County Pension Commission based upon certain fraudulent practices of the Commission. The Supreme Court established the following guidelines for consideration in determining the propriety of continued entitlement to pension benefits:
(1) the applicant's subjective good faith belief that he was entitled to benefits;

*479 (2) the extent of the applicant's change of position in reliance on the initial pension grant; and
(3) the extent to which the applicant's reliance has foreclosed alternative opportunities for pension benefits [Id. at 200.]
For that determination, many of the claims were remanded to the trial court. Id. at 201.
We conclude that the circumstances here do not justify a remand. There is no question concerning the subjective good faith belief of petitioners that they were entitled to the benefits approved by TPAF. In fact, both parties to both agreements believed in good faith that the contractual provisions relied upon were lawful and enforceable. Had they not relied upon approval by TPAF, petitioners could have remained in their tenured positions and thus amassed additional pension benefits. It was this opportunity which they relinquished permanently and irrevocably by their retirement. We discern no contested genuine issue of fact. Hence, no purpose would be served by a remand for further consideration.
The order under review reducing petitioners' benefits is reversed.