969 A.2d 510 (2009)
407 N.J. Super. 79
Tito LOPEZ and Daphne Lopez, Plaintiffs-Appellants,
v.
Tushar PATEL and William Brown, Defendants-Respondents, and
Janie B. Nail, Defendant.
No. A-5262-07T3
Superior Court of New Jersey, Appellate Division.
Argued March 25, 2009.
Decided May 7, 2009.
*512 Edward McElroy, Edison, argued the cause for appellants (Eichen, Levinson & Crutchlow, attorneys; Mr. McElroy, of counsel and on the brief).
Stephen J. Foley, Jr., Asbury Park, argued the cause for respondent Tushar Patel (Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys; Mr. Foley, of counsel and on the brief).
Jodi L. DeMarco, Paramus, argued the cause for respondent William Brown (Law Offices of Moira Doherty, attorneys; Ms. DeMarco, of counsel and on the brief).
Before Judges PAYNE, WAUGH and ASHRAFI.
The opinion of the court was delivered by
ASHRAFI, J.S.C. (temporarily assigned).
Plaintiffs appeal from an order dismissing their automobile negligence complaint in accordance with Habick v. Liberty Mutual Fire Insurance Co., 320 N.J.Super. 244, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999). In Habick, we held that a plaintiff is collaterally estopped from relitigating in a negligence action an adverse finding on proximate cause previously reached in PIP arbitration. Here, because defendants delayed without excuse raising collateral estoppel as a defense until the day of trial, we hold that defendants themselves are equitably estopped from invoking collateral estoppel against plaintiffs. We reverse the order of dismissal and remand for trial.

I
Plaintiff, Tito Lopez, was a passenger in a car that was struck in the rear on May 29, 2004, by a car driven by defendant Tushar Patel. Lopez alleges that he suffered serious injury to his back that required surgery in August 2004 and has left him bound to a wheelchair. In January 2005, Lopez and his wife, Daphne Lopez, filed a negligence complaint in Superior Court against defendant Patel, and also against defendants William Brown and Janie B. Nail, who were respectively the driver and owner of the car in which Lopez was riding.
*513 Lopez did not own a car and did not have his own automobile policy with personal injury protection (PIP) coverage. In October 2004, Lopez submitted an insurance claim for PIP benefits to Clarendon National Insurance Company, which was the automobile insurer for defendant Janie B. Nail. Clarendon denied the claim, taking the position that the August 2004 surgery and other treatment for Lopez's back were not caused by the May 2004 accident. Before the accident, Lopez had a history of back problems, and after the accident, in July 2004, he had fallen from a chair, requiring hospitalization for further injury to his back.
In March 2005, two months after filing plaintiffs' negligence complaint, Lopez's attorney filed a demand for arbitration of his PIP claim against Clarendon, pursuant to N.J.S.A. 39:6A-5, -5.1 and N.J.A.C. 11:3-5.1 et seq. The arbitration hearing was held on September 12, 2006, while the negligence action was still pending. Following the advice of his attorney, Lopez did not attend the arbitration hearing, and no testimony was taken. Instead, both Lopez and Clarendon relied on written reports of doctors. Lopez's doctors reported that the accident of May 2004 aggravated his pre-existing condition necessitating the spinal surgery performed in August 2004. Clarendon's doctor reported that plaintiff's surgery was not causally related to the accident of May 2004 but to his pre-existing condition and the fall from the chair.
Clarendon also availed itself of the PIP statutory provision that allows any party to request an evaluation regarding causation by an independent medical review organization (MRO). N.J.S.A. 39:6A-5.1d. The MRO doctor reviewed Lopez's medical records and concluded that the motor vehicle accident was at most a very minor, "no greater than 2 percent," contributing factor to plaintiff's injuries. The MRO doctor's report was provided to the arbitrator and counsel.
The arbitrator rendered her written decision on November 13, 2006, which coincidentally was the initial trial date set for Lopez's negligence action in Superior Court. Finding that Lopez had not proven by a preponderance of the evidence that his surgery and other medical treatment were proximately caused by the accident of May 2004, the arbitrator decided the PIP claim against Lopez and in favor of Clarendon.
After the arbitration, present counsel for plaintiffs was substituted into their negligence action. At the request of defendant Patel, the November 13, 2006, trial date was adjourned for reasons unrelated to the PIP arbitration. Following a case management conference held on January 4, 2007, discovery was re-opened until January 31, 2007, to permit plaintiffs' new attorney to depose defendant Patel's medical expert. Thereafter, trial dates were repeatedly set and adjourned nine more times until the case finally came on for trial on the tenth new trial date, January 7, 2008. At oral argument for this appeal, counsel for plaintiffs stated that four of the ten trial dates were "real," meaning that he expected the trial to proceed on those four dates, and he prepared for trial. For the January 2008 trial date, plaintiffs traveled to New Jersey from their residence in Georgia. Plaintiffs' attorney represents that he paid thousands of dollars to an expert witness and for other trial services.
A few days before the January 2008 trial date, the trial judge solicited pretrial submissions from the attorneys to help identify trial issues. For the first time, defendant Patel's attorney mentioned the PIP arbitration and collateral estoppel, and he provided a copy of Habick v. Liberty Mutual Fire Insurance Co., supra, 320 *514 N.J.Super. 244, 727 A.2d 51, to the judge. On the morning of trial, he moved to dismiss plaintiffs' complaint. Defendant Brown joined in the motion.[1] The trial judge expressed great surprise and dismay at the timing of the motion. He admonished counsel for failing to raise the motion months earlier. Counsel for Patel responded that he had no obligation to raise the motion earlier and that plaintiffs had an equal opportunity to address the consequences of the PIP arbitration.
Plaintiffs argued that defendants had waived and should be estopped from raising the PIP arbitration as a defense because of delay and prejudice to plaintiffs in preparing for trial. Believing itself bound by our holding in Habick, the trial court reluctantly granted defendants' motion and entered an order dismissing plaintiffs' complaint.

II
In Habick, supra, 320 N.J.Super. 244, 727 A.2d 51, we held that where a plaintiff voluntarily chooses to arbitrate a PIP claim, the plaintiff is collaterally estopped from relitigating an issue necessary to the claim that was determined against the plaintiff in the arbitration. The plaintiff in Habick had filed for arbitration after being denied PIP coverage. Id. at 246, 727 A.2d 51. The arbitrator found that the medical treatment sought was not causally related to the plaintiff's automobile accident and denied her claim. Id. at 246-47, 727 A.2d 51. Plaintiff then filed a complaint in the Superior Court seeking to vacate or modify the PIP arbitration award, or alternatively, to declare it inapplicable to her claim for uninsured motorist (UM) benefits. The trial court denied her applications.
On appeal, we determined that a decision in PIP arbitration has "the same preclusive effect as a prior judicial determination." Id. at 255, 262, 727 A.2d 51. We cited Kozlowski v. Smith, 193 N.J.Super. 672, 475 A.2d 663 (App.Div.1984), for its holding that an adverse judicial decision on a PIP claim is binding for the same injury in a negligence action. We said in Habick, "The guiding principle is [whether] the party to be bound had a `full and fair opportunity to litigate the issue' in the earlier proceeding." 320 N.J.Super. at 257, 727 A.2d 51 (quoting Restatement (Second) of Judgments § 29 (1982)). Concluding that plaintiff had such an opportunity, we held that the prior arbitration had preclusive effect upon the issue of causation in plaintiff's claim for the same injuries under her uninsured motorist coverage. Id. at 262, 727 A.2d 51.
The Lopez plaintiffs raise several arguments against application of Habick to their negligence action. Most significant, they argue that collateral estoppel is contrary to the public policy objectives of no-fault automobile insurance, namely, the intent to provide payment for medical expenses and similar benefits to injured persons without time-consuming litigation. See Wilson v. Unsatisfied Claim and Judgment Fund Bd., 109 N.J. 271, 278, 536 A.2d 752 (1988). The statutory provisions for alternative dispute resolution of PIP claims advance those objectives. Plaintiffs say that no litigant would risk an adverse finding in a PIP arbitration, where the evidentiary rules are relaxed and the right to appeal is limited, if the arbitration decision will preclude a negligence action.
In Habick, "[w]e recognize[d] that arbitration of PIP claims advances the legislative *515 intent to make medical treatment available quickly and expeditiously after an auto accident." 320 N.J.Super. at 261, 727 A.2d 51. We concluded, however, "that in allowing the injured claimant to choose the forum in which to resolve her PIP claim, the legislature could not have intended ... [to grant] freedom to retry [an] arbitrated claim in subsequent litigation." Ibid. Plaintiffs have presented no argument that leads us to a different conclusion on grounds of public policy.
Plaintiffs also contend that the presumption of correctness afforded to the MRO doctor's opinion by N.J.S.A. 39:6A-5.1d subjected plaintiff Lopez to a different burden of proof in the PIP arbitration than required in the negligence action. The statute provides, however, that the presumption of correctness "may be rebutted by a preponderance of the evidence." Ibid. That standard of proof is identical to the standard that plaintiffs must meet in their negligence action. Furthermore, while the arbitrator acknowledged the presumption to be afforded the MRO doctor's opinion, she also found that plaintiff Lopez failed to satisfy the burden of proof described in Bowe v. New Jersey Manufacturers Insurance Co., 367 N.J.Super. 128, 842 A.2d 247 (App.Div.2004), that plaintiff "prove, by a preponderance of the evidence, that the treatment for which [he] seeks reimbursement was proximately caused by the particular automobile accident." Id. at 131, 842 A.2d 247. The arbitrator considered the same burden of proof that plaintiffs would be required to sustain in their negligence action.
Plaintiffs argue next that the PIP arbitration was not voluntary because it was required by the terms of the Clarendon insurance policy. Plaintiffs say that the holding of Habick should be deemed superseded by amendments enacted as part of the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1 et seq., that permit the insurance carrier, as well as the insured, to demand arbitration of PIP disputes. See N.J.S.A. 39:6A-5.1a; Allstate Ins. Co. v. Sabato, 380 N.J.Super. 463, 469, 882 A.2d 972 (App.Div.2005).
We need not address this argument directly because it has no application to the record before us. The holding of Habick is closely tied to the voluntary decision of the claimant to seek arbitration as the forum to resolve the PIP dispute. 320 N.J.Super. at 257, 262, 727 A.2d 51. There is no evidence in the record before us that the terms of the Clarendon insurance policy required Lopez to arbitrate his PIP claim. The insurance policy is not included in the record, and plaintiffs do not refer to specific terms of the policy requiring arbitration. Moreover, there is no dispute here that Lopez filed the demand for PIP arbitration. Nothing in the record suggests that his participation in the PIP arbitration was other than voluntary.
Finally, plaintiffs raise arguments about their due process rights and the absence of the negligence defendants from the PIP arbitration. Regarding due process, plaintiffs were represented by counsel at the arbitration hearing and had the opportunity to present witnesses of their choosing. Although they voluntarily agreed to proceed by means of written doctors' reports, they were given full opportunity to be heard. See Pace v. Kuchinsky, 347 N.J.Super. 202, 217, 789 A.2d 162 (App.Div.2002); Habick, supra, 320 N.J.Super. at 255, 727 A.2d 51; Kozlowski, supra, 193 N.J.Super. at 675, 475 A.2d 663. As to defendants in this negligence action not being parties to the arbitration, the doctrine of collateral estoppel requires that "the party against whom issue preclusion is asserted [be] a party to or in privity with a party to the prior proceeding." Pace v. Kuchinsky, supra, 347 N.J.Super. *516 at 215, 789 A.2d 162. "Generally the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant." Habick, supra, 320 N.J.Super. at 256, 727 A.2d 51 (internal citations and quotation omitted).
Under Habick, plaintiffs were subject to collateral estoppel to bar them from relitigating proximate cause of Lopez's back injuries in this negligence action.

III
Despite our conclusion that the doctrine of collateral estoppel would normally bar plaintiffs' ability to prove causation, we decline to apply that doctrine to plaintiffs' complaint because defendants are responsible for the unexplained and prejudicial delay in raising it as a defense.
The PIP arbitration decision was issued on November 13, 2006. Defendants did not raise the collateral estoppel defense until the morning of trial on January 7, 2008, almost fourteen months later. When the trial court asked defendant Patel's attorney at what point he realized that he "had a legitimate issue of collateral estoppel," the attorney answered that the issue "was in the case as soon as the award came out on both sides. Both sides knew it." Defendants provide no explanation for the delay in raising the defense, other than to say that they were not required to raise it before trial.
Rule 4:6-2, however, states, "Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint... shall be asserted in the answer thereto." Although collateral estoppel was not available to defendants at the time they filed their answers, arguably, they should have moved to amend their pleadings under Rule 4:9-1 after it did become available in November 2006. Furthermore, the absence of a specific deadline by statute or rule does not excuse dilatory conduct in asserting a defense. See Knorr v. Smeal, 178 N.J. 169, 178, 836 A.2d 794 (2003).
Plaintiffs argue that defendants waived any collateral estoppel defense. "Waiver is the voluntary and intentional relinquishment of a known right." Id. at 177, 836 A.2d 794. As in Knorr v. Smeal, we cannot conclude that defendants intentionally elected to forgo a collateral estoppel defense. See id. at 178, 836 A.2d 794.
We conclude, however, that defendants are equitably estopped from belatedly raising the defense because it was available to them and they should have raised it many months earlier.
Our Supreme Court has defined the doctrine of equitable estoppel as:
the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.
[Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449, 217 A.2d 617, cert. denied sub nom. Mount Vernon Fire Ins. Co. v. Highway Trailer Co., 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966) (quoting 3 Pomeroy's Equity Jurisprudence § 804 (5th ed. 1941)).]
In Heuer v. Heuer, 152 N.J. 226, 704 A.2d 913 (1998), the Court used more colloquial language to describe one type of equitable estoppel:
"an individual is not permitted to `blow both hot and cold,' taking a position inconsistent with prior conduct, if this would injure another, regardless of *517 whether that person has actually relied thereon."
[Id. at 237, 704 A.2d 913 (quoting Kazin v. Kazin, 81 N.J. 85, 94, 405 A.2d 360 (1979)) (quoting Brown v. Brown, 274 Cal.App.2d 178, 189, 82 Cal.Rptr. 238, 244-45 (1969)).]
Equitable estoppel "is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Knorr v. Smeal, supra, 178 N.J. at 178, 836 A.2d 794; see Mattia v. Northern Ins. Co. of N.Y., 35 N.J.Super. 503, 510, 114 A.2d 582 (App.Div.1955). In this case, defendants' course of action or voluntary conduct was to participate in ongoing discovery and trial preparation while withholding the collateral estoppel defense until the day of trial. Although the trial judge repeatedly attempted to learn why an earlier motion had not been made, thus saving the plaintiffs and the court the inconvenience and expense of trial preparation, defense counsel gave no direct response, instead insisting that he was within his rights to wait until the time of trial. The absence of an adequate explanation permits our reasonable inference that counsel voluntarily withheld raising the collateral estoppel defense, although for what reasons, we cannot determine.
Our courts have not looked favorably upon defendants who sit on their rights and then surprise the court and the plaintiffs at the eleventh hour with an affirmative defense that disposes of plaintiffs' claims. In Knorr v. Smeal, supra, 178 N.J. at 182, 836 A.2d 794, the Court held that a defendant could not rely on the affidavit of merit statute, N.J.S.A. 2A:53A-26 to -29, to defeat plaintiff's medical malpractice claim because the defendant had waited more than fourteen months to assert the defense. During that time, interrogatories were exchanged, depositions were taken, plaintiff was examined by the defendant's medical expert, and expert reports were prepared and served. Knorr, supra, 178 N.J. at 174, 836 A.2d 794. The Court concluded that "the Legislature could not have intended to allow an otherwise meritorious claim to proceed indefinitely at great expense to both parties, only to have defendant obtain a dismissal on procedural grounds that should have been asserted much earlier in the process." Id. at 182, 836 A.2d 794.
In a similar context, Hernandez v. Stella, 359 N.J.Super. 415, 418-19, 820 A.2d 102 (App.Div.2003), held that defendant was barred from belatedly seeking to dismiss plaintiff's automobile negligence complaint on the ground that plaintiff had failed to serve a physician's certification required by N.J.S.A. 39:6A-8.
In several cases, equitable estoppel has barred the tardy assertion of a statute of limitations. In White v. Karlsson, 354 N.J.Super. 284, 806 A.2d 843 (App.Div.), certif. denied, 175 N.J. 170, 814 A.2d 635 (2002), we refused to apply a statute of limitations where a defendant allowed plaintiffs to proceed through discovery and non-binding arbitration and then asserted the defense one week before trial. Noting that the "primary purpose behind statutes of limitation is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend," we concluded that "[a] limitations defense should not be permitted when its `mechanistic application ... would ... inflict obvious and unnecessary harm upon individual plaintiffs without advancing [the] legislative purposes.'" Id. at 292, 806 A.2d 843 (quoting Galligan v. Westfield Centre Serv., Inc., 82 N.J. 188, 192, 412 A.2d 122 (1980)). See also Williams v. Bell Tel. Labs., Inc., 132 N.J. 109, 112, 119-20, 623 A.2d 234 (1993) (refusing to apply statute of limitations to *518 "void an otherwise legitimate claim" where defense was raised after the jury returned a verdict in plaintiff's favor and application would "frustrate the objectives" of the statute); Zaccardi v. Becker, 88 N.J. 245, 256-57, 440 A.2d 1329 (1982) (defendant "cannot now claim ... that the case is stale and ought not be heard" where defendant had allowed discovery to proceed for seventeen months after plaintiff's complaint was dismissed for failure to answer interrogatories).
In Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984), the Court set forth the elements of equitable estoppel:
To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment.
It is not necessary, however, to establish that defendants sought to harm plaintiffs through their conduct. "It makes no difference that defendant did not intend to mislead or cause plaintiffs to continue with discovery." Knorr v. Smeal, supra, 178 N.J. at 180, 836 A.2d 794. See also Miller v. Bd. of Trustees, 179 N.J.Super. 473, 477, 432 A.2d 560 (App.Div.), certif. denied, 88 N.J. 502, 443 A.2d 714 (1981) ("it is not essential to application of the doctrine that the act was fraudulent or intentionally misleading"). It is sufficient if plaintiffs relied on defendants' conduct leading plaintiffs naturally and probably to act to their own detriment.
Plaintiffs relied on the trial dates set by the court and unchallenged by defendants with the expectation that their negligence claims would be tried. During the fourteen-month interval that the collateral estoppel defense was available, plaintiffs took additional discovery in January 2007 by deposing Patel's expert, and they prepared for several "real" trial dates. Plaintiffs traveled from their home in Georgia for trial and paid thousands of dollars in fees for expert testimony and other services at the trial they expected to start on January 7, 2008. As stated by the Court in Knorr v. Smeal, supra, 178 N.J. at 180, 836 A.2d 794, "Defendant's failure to file a dismissal motion surely induced plaintiffs to believe that the case was on course."
Defendants contend that plaintiffs' attorney also knew about the adverse arbitration decision and could have raised the issue on behalf of plaintiffs rather than prepare for trial. This argument requires that the court impose an unrealistic and unfair obligation upon plaintiffs' counsel. Plaintiffs had no incentive to make a motion raising a potential defense against themselves. Defendants are the parties that seek the benefits of collateral estoppel; they had the obligation to raise the defense.
The primary purpose of collateral estoppel is "to promote efficient justice by avoiding the re-litigation of matters which have been fully and fairly litigated and fully and fairly disposed of." Kortenhaus v. Eli Lilly & Co., 228 N.J.Super. 162, 166, 549 A.2d 437 (App.Div.1988). Another is to protect individuals from "vexatious repetitious litigation." Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435, 165 A.2d 163 (1960). Here, defendants' conduct in not promptly asserting their collateral estoppel defense undermined the objective of efficient justice because it required plaintiffs and the court to prepare for trial. Furthermore, defendants were not subject to "vexatious repeat litigation" because they were not parties to the arbitration.
*519 In Habick, we concluded that, "The policies behind the doctrine of collateral estoppelfairness, finality, and judicial economyare all served by giving preclusive effect to the confirmed PIP arbitrator's decision." 320 N.J.Super. at 262, 727 A.2d 51. Those policies are not served when a party knowingly permits the case to proceed through lengthy pretrial proceedings and trial preparation without adequate excuse or explanation.
While application of collateral estoppel to plaintiffs' claims here is not merely a procedural defense, it is still a defense rooted in equity, and it should not be applied when it is unfair to do so. Pace v. Kuchinsky, supra, 347 N.J.Super. at 215, 789 A.2d 162; Selective Ins. Co. v. McAllister, 327 N.J.Super. 168, 174, 742 A.2d 1007 (App.Div.), certif. denied, 164 N.J. 188, 752 A.2d 1290 (2000); Pivnick v. Beck, 326 N.J.Super. 474, 485-86, 741 A.2d 655 (App.Div.1999), aff'd, 165 N.J. 670, 762 A.2d 653 (2000); In re Tenure Hearing of Tanelli, 194 N.J.Super. 492, 497, 477 A.2d 394 (App.Div.), certif. denied, 99 N.J. 181, 491 A.2d 686 (1984). We acknowledge that plaintiffs have not established the merits of their negligence claim. Nevertheless, where defendant delayed action to the detriment of the plaintiffs, the essential purposes of collateral estoppel have been frustrated by defendant's inaction.
In balancing the equities to determine whether defendants should be permitted to assert collateral estoppel so late in the case, we have found that defendants have no valid excuse for delaying their assertion of the defense. We have also concluded that allowing defendants to assert the defense would not further the objectives of collateral estoppel. Plaintiffs have expended time and money with full expectation that their negligence case would be heard. The equities weigh against defendants. Defendants, therefore, are equitably estopped from asserting collateral estoppel as a defense to plaintiffs' claims.
Reversed and remanded for trial.
NOTES
[1] The record on appeal does not indicate what had happened to defendant Nail. She is not a respondent on this appeal.